to the object and purpose of the testator with respect to creating the trust, and decide as matter of law that it terminated sooner than the period for which he expressly provided that it should continue. The case at bar is less favorable to the plaintiff, owing to the fact that it presents merely a question of law, than Halstead v. Union Trust Co. of New York, as trustee, 105 N. Y. Supp. 1119, decided by this court on the 14th of June, 1907, wherein we affirmed, without opinion, a decision dismissing the complaint in a suit in equity to dissolve a trust created for the benefit of the plaintiff during the life of his wife, from whom he was subsequently lawfully divorced and who had lawfully remarried.

It follows, therefore, that the defendant should have judgment that the plaintiff is not entitled to recover the fund, or any part thereof, together with costs of the action. All concur.

DEERING v. GEBHARD.

(Supreme Court, Trial Term, New York County. January 21, 1908.)

1. MALICIOUS PROSECUTION—"PROBABLE CAUSE" DEFINED.

Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent man in his belief that the person accused is guilty of the offense with which he is charged.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5618–5627; vol. 8, p. 7765.]

2. SAME—WANT OF PROBABLE CAUSE—CRIMINAL PROSECUTION.

A large number of persons, many of them newspaper reporters, gathered in front of defendant's house, under the belief that a certain person was concealed therein, and, although told that such person was not there, continued conversing in loud tones, and, on defendant approaching his residence, surrounded his cab, while efforts were made to snap a camera at him, so that it was impossible for him to alight; the conditions became worse, until it was necessary for a policeman to drive persons off the sidewalk, and later, on defendant leaving his house, with others, attempts were made to take his photograph, a crowd gathering around, who, when told that the person sought was not in the house and that they must disperse, jeered; plaintiff, one of the reporters, laughing with the rest. Held, that these acts constituted conduct tending to a breach of the peace, within Consolidation Act, Laws 1882, p. 366, c. 410, § 1458, preserved by Greater New York Charter, providing that every person shall be deemed guilty of disorderly conduct "who shall use any threatening, abusive or insulting behavior with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned"; and an action for malicious prosecution would not lie against defendant for procuring plaintiff's arrest under such circumstances, as being without probable cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, § 24.]

Action by Ashby Deering against Frederick Gebhard. At the close of the case the defendant moved to dismiss the complaint, first, because the plaintiff had failed to prove any cause of action against the defendant; second, because the plaintiff had failed to prove that the prosecution was instituted by the defendant; third, that the plaintiff had failed to prove a want of probable cause; fourth, that the plain-

tiff had failed to prove that the prosecution was instituted by malice on the part of the defendant. Granted.

William F. Hart, for plaintiff.

Bowers & Sands (W. H. Van Benschoten, of counsel), for defendant.

GIEGERICH, J. (orally). Taking up the points urged by the defendant's counsel, it might be well to consider the things which it is incumbent upon a plaintiff to prove in a case of this character (for malicious prosecution), which are: First, that the defendant instigated the criminal proceedings against the plaintiff; second, that such prosecution was without probable cause; third, that it was accompanied by malice; and, fourth, that it terminated in favor of the plaintiff. I am assuming, for the purposes of this motion, that the plaintiff has established the first and fourth propositions, thus leaving for discussion the question of probable cause and the question of malice.

Now, what is probable cause? Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent man in his belief that the person accused is guilty of the offense with which he is charged. It does not depend upon the guilt or innocence of the accused, or upon the fact whether a crime has been committed. As was said by the Court of Appeals in the case of Rawson v. Leggett, 184 N. Y., at page 511, 77 N. E., at page 664:

"The question is not whether plaintiff's evidence now given that he did not commit the crimes charged to him is true. The propriety of defendants' conduct in causing him to be indicted is to be decided by the facts as they appeared to be at the time the prosecution was instituted, and the question is whether these facts as they then appeared were such that a discreet and prudent person would have been led to the belief that the accused had committed the crime with which he was charged. If defendants had knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that they had lawful grounds for prosecuting the plaintiff in the manner complained of, then probable cause was present, and this action will not lie."

The plaintiff in this case was charged with what is known technically in the books as "disorderly conduct." According to the provisions of section 1458 of the consolidation act (Laws 1882, p. 366, c. 410):

"Every person in said city and county [meaning the city and county of New York] shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say"—I shall not read the first and second subdivisions, because they do not apply to this case; but the third does—"Every person who shall use any threatening, abusive, or insulting behavior with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned."

These provisions have been preserved by the Greater New York charter and were in force when the arrest in question was made. The Appellate Division of the Second Department, in the case of People ex rel. Frank v. Davis reported in 80 App. Div., at page 454, 80 N. Y. Supp. 875, say:

"Disorderly conduct, in the abstract, does not constitute any crime known to the law. It is only when it 'tends to a breach of the peace,' under the circum-

stances detailed in section 1458 of the consolidation act, that it constitutes a minor offense cognizable by the police magistrates of the city of New York, and when it in fact threatens to disturb the peace it is a misdemeanor as well under section 675 of the Penal Code as at common law, and not within the jurisdiction of the police magistrates, but of the Court of Special Sessions"— citing Laws 1895, p. 1289, c. 601, § 14; Laws 1901, p. 602, c. 466, § 1409.

Now, considering the evidence in the most favorable light to the plaintiff, I am of the opinion that upon the facts disclosed the defendant was justified in making the charge which it is claimed he made, and I shall assume, as I said before, for the purpose of this motion, that he instigated the same. Let us look at the facts as they were presented by the plaintiff. It appears that certain persons, styled "county detectives," attached to the office of the district attorney of this county, were directed by him to serve a subpœna upon one Reginald Vanderbilt to appear as a witness before the grand jury in an inquiry or proceeding against one Richard Canfield. For some reason not disclosed, newspaper reporters became acquainted with the fact that Mr. Vanderbilt was to be subpœnaed as a witness and they were present, in numbers variously estimated by the witnesses who have testified in this case, at the house of the defendant, where it is claimed that Vanderbilt had been secreted.

It is without contradiction, so far as I can discover, that the defendant told the reporters, who were assembled on the morning of the day in question, that Mr. Vanderbilt was not in the house. It appears that a large number of persons had congregated in front of the defendant's premises, as well as the adjoining premises, many of whom were reporters in search of news; that they conversed in tones loud enough to be heard in the premises, 100 Fifth avenue, of which the defendant was a part owner with his sister Mrs. Neilson, and he also owned with her the adjoining premises, No. 98 Fifth avenue, in which the defendant had an apartment or room. It also appears that the lower part of No. 98 was leased to a tenant named Winteroth, who there conducted a piano business. It further appears that upon the morning of the day in question the defendant drove up to his residence in an electric cab; that, as he attempted to alight, efforts were made to snap a camera at him; that the cab was surrounded by reporters, who were in the company of the man who attempted so to take the defendant's picture; that he found it impossible to alight, and that the conditions, instead of improving, seemed to grow worse, it being conceded by the plaintiff's witnesses that it became necessary on the afternoon of the day in question, while the plaintiff was there, for a mounted policeman to drive persons from the sidewalk in front of 100 and 98 Fifth avenue. The defendant telephoned to his attorneys, Messrs. Bowers & Sands, on the afternoon of the day in question, in order to obtain their advice in the matter; but unfortunately, it being a Saturday afternoon, every one had departed for the day except Mr. McCarthy, who said he was the assistant managing clerk. Mr. McCarthy hurried to the defendant's house, where he conferred with the defendant, and also with Patrolman Donnelly, whose aid and assistance he sought. The policeman hesitated to act, and telephoned to his sergeant for instructions, and was instructed to act upon his dis-

cretion. Then, in full view of everybody, Mr. McCarthy, the policeman, and the defendant left the house, and as they did so attempts were immediately made by a man possessing a camera to take a photograph of the defendant, which greatly excited and annoyed him, and a crowd gathered around the photographer. Both McCarthy and the defendant told the crowd that Mr. Vanderbilt was not in the house and that they must disperse. The crowd jeered, and laughing with the rest was the plaintiff in this case. All these acts constituted conduct that tended to a breach of the peace, and there is a failure to prove either a want of probable cause or the presence of malice on the part of the defendant, both of which, as I stated at the outset, are essential elements in an action of this kind.

Considerable stress seems to be laid by the counsel for the plaintiff upon the fact that the plaintiff is a newspaper reporter. Reporters in quest of news have no superior rights over others in the streets or elsewhere, and they are amenable to our laws just as much as all other citizens. Therefore, if a reporter, in his zeal to obtain news, voluntarily places himself in a position where a reasonably prudent man would be warranted in believing that the reporter had violated the law, and he is arrested accordingly, although it may turn out that he is innocent, he is, just like all other persons in a similar situation, without remedy. For these reasons, as well as others not discussed, nor necessary to be discussed, the motion to dismiss the complaint is granted.

Motion denied. Exception to plaintiff.